IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LONNIE K. MURRILL, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. DKC-17-2255 |
| WARDEN, | * | |
| BALTIMORE CITY DETENTION CENTER, | * | |
| Defendants | | |

\*\*\*

**MEMORANDUM OPINION**

Petitioner Lonnie K. Murrill is incarcerated at Roxbury Correctional Institution. On August 7, 2017, he initiated this lawsuit by filing a complaint pursuant to 42 U.S.C. § 1983, which he supplemented at court direction. ECF Nos. 1, 2, 3.[1] Defendants Warden Otis Merritt and the Baltimore City Detention Center ("BCDC") filed a motion for dismiss or, in the alternative, for summary judgment, ECF No. 18, and Murrill filed an opposition. ECF No. 23. Murrill subsequently filed an amended complaint,[2] and a motion for appointment of counsel. ECF Nos. 24, 25. For reasons to follow, the court will by separate order dismiss the claims against BCDC, and grant Murrill's motion for appointment of counsel.

---

[1] Insofar as Murrill contends that he is innocent of the crime for which he was convicted (ECF No. 15 at 3) he may file a petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 after he exhausts his state court remedies. That issue will not, however, be addressed in the context of this case. The Clerk will send him a § 2254 information and forms packet.

[2] Almost three months after Defendants filed their dispositive motion, Murrill filed an amended complaint without requesting leave of the court, seeking to name additional defendants and introduce claims of inadequate medical care. *See* Fed. R. Civ. P. 15(a)(2) (stating "a party may amend its pleading only with the opposing parties written consent or the court's leave. The court should freely give leave when justice so requires"). Appointed counsel may amend the complaint to include these claims and name additional correctional and medical defendants.

**BACKGROUND**

Murrill's claims arise from his pre-trial confinement at the Baltimore City Detention Center (BCDC). ECF Nos. 1, 3, 18-1 at p. 2. Murrill asserts that he was placed on "lock-up" instead of administrative segregation because no other beds were available, and on February 16, 2015, he was assaulted and injured by his "dangerously strange" cellmate Joel Santiago. ECF Nos. 1, 3. Murrill was taken to the Baltimore Shock Trauma Pavilion ("Shock Trauma") for treatment.[3] ECF No. 3 at 2, 4. Murrill asserts that after he was released from Shock Trauma, he was transferred immediately to the Maryland Division of Correction "to avoid bearing plaintiff's injury liability. No administrative remedy was adjudicated at BCDC." ECF No. 3 at 4. Murrill asserts that he stayed in a prison hospital for over eight months. ECF No. 3 at 2. He avers that he attempted to resolve his claims through the administrative remedy procedure (ARP) process, but his grievance was denied due to insufficient evidence and because BCDC had closed.[4] ECF No. 3 at 4.

Murrill claims that he sustained permanent neck and spinal cord injuries due to the housing to which he was assigned at BCDC. As relief, Murrill asks that Defendants "to pay as much as they can because my life will always be in pain & extreme paranoia will always be there…." ECF No. 3 at 3. Later in the complaint, he asks for damages of $50 million due Defendants' negligence. ECF No. 3 at 5.

---

[3] The court assumes Murrill is referring to the R. Adams Cowley Shock Trauma Center at the University of Maryland Shock Trauma in Baltimore. *See* https://www.umms.org/ummc/health-services/shock-trauma/about (viewed on September 7, 2018).

[4] The court takes notice that in July of 2015, the Governor of Maryland ordered BCDC closed.

## DISCUSSION

Defendants assert several grounds for dismissal or summary judgment including: (1) BCDC is not amenable to suit under 42 U.S.C. § 1983; (2) failure to state a claim; and (3) Murrill has failed to exhaust his administrative remedies.

### Administrative Exhaustion

A claim not properly presented through the ARP process must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F.Supp.2d 523, 530 (D. Md. 2003), aff'd, 98 Fed. Appx. 253 (4th Cir. 2004); *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought

intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock,* 549 U.S. at 215-216; *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). Nevertheless, a claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, __ U.S. __, 136 S.Ct. 1850, 1857 (2016), citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729. Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo*, 286 F.3d at 1024 (7th Cir. 2002) (emphasis in original)). But, the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

The four-step administrative remedy process at BCDC is set forth in Pretrial Detention and Services Directive No. 180-1, dated June 20, 2008. ECF No. 18-1 at p. 5; Decl. of Kelvin Harris, Director of Standards, Compliance, and Litigation for the Division of Pretrial Detention and Services (DPDS), ECF No. 18-2 ¶¶ 2-4.[5] Defendants assert that Murrill was aware of the BCDC grievance procedure, and in fact filed a grievance on February 15, 2015,[6] the day prior to the assault, which was dismissed. Harris Decl., ECF No. 18-2 ¶ 4. Murrill, who by the time of the dismissal was no longer housed at BCDC, did not appeal the dismissal or otherwise comply with Steps II through IV of the process. Harris Decl., ECF No. 18-2 ¶ 4. After Murrill was convicted and committed to the Division of Correction, he filed a grievance with the Inmate Grievance Office (IGO) of the Department of Public Safety and Correctional Services, which was dismissed for lack of jurisdiction because the IGO has no jurisdiction over officials or employees of BCDC. ECF No. 18-2 ¶ 4; *see also* ECF No. 24 at 5.

In *Ross*, the Supreme Court outlined three situations when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S.Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.

---

[5] The process is described as follows: Step I- Detainee files a Resident Complaint Form within 15 calendar days of the incident giving rise to the grievance. The Resident Grievance Office responds within 20 working days; Step II- Detainee files a Motion for Grievance Committee Step II form; Step III Detainee files a motion to Appeal to Warden, Step III form within 3 working days of the decision rendered in Step II; and Step IV Detainee files a Motion for Appeal to the Assistant Commissioner-Step IV form within 3 working day of the receipt of the Step III decision. ECF No. 18-2 ¶ 3.[5]

[6] This grievance was filed the day before the February 16, 2015 assault. Defendants do not describe the nature of the grievance but seem to reference it to demonstrate that Murrill was aware of the ARP process.

In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

After the assault, Murrill, who had sustained serious injuries, was treated at Shock Trauma for three days, and upon discharge immediately transferred to the Division of Correction, allegedly, "to avoid bearing plaintiff's injury liability." ECF No. 3 at 4. As noted, he remained hospitalized for eight months afterwards. In his opposition, Murrill states that "[k]nowledge of the system turns to the lack of available ARP forms, unwillingness of staff to provide forms that are available, refusal of ranking staff to sign or accept complaints, and a plethora of other impediments inhibits usage of the system." ECF No. 23 at 3. Further, Murrill indicates that prior to the assault he had mailed letters to the Warden, ARP staff and other employees raising concerns about his cellmate. ECF No. 23 at 2.

Murrill's serious injuries, emergency hospitalization, transfer from BCDC, the facility's closing, and the IGO's lack of jurisdiction over BCDC matters, made pursuing and exhausting his administrative remedies extraordinarily difficult, if not impossible. Therefore, the court will defer consideration of Defendants' affirmative defense and grant Murrill's motion for appointment of counsel to permit additional development of facts and further briefing on whether administrative exhaustion was available to Murrill.

**Failure to State a Claim**

To state a claim under § 1983, a plaintiff must allege that: 1) a right secured by the Constitution or laws of the United States was violated and 2) the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). BCDC is not a "person." *See Harris v. Baltimore City Detention Center*, Civil Action No. PWG-14-217,

2014 WL 994377 * 2 (D. Md. March 13, 2014). Courts have recognized that inanimate objects such as buildings, facilities, and grounds do not act under color of state law. *See Allison v. Cal. Adult Auth.*, 419 F.2d 822, 823 (9th Cir. 1969) (California Adult Authority and San Quentin Prison not "person[s]" subject to suit under 42 U.S.C. § 1983); *Preval v. Reno*, 57 F.Supp.2d 307, 310 (E.D.Va.1999) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301 (E.D.N.C.1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."). Accordingly, the court will dismiss the claims against BCDC.

Next, Defendants argue that Murrill fails to allege Warden Merritt was personally involved in the matters alleged. Given Murrill's present self-represented status, serious injuries, transfer from BCDC, and BCDC's closing, identifying the officials with personal participation is especially difficult. The court will defer consideration of Defendant's argument until after counsel has had an opportunity to develop the facts further and amend the complaint as appropriate. In the meantime, that portion of the motion will be denied without prejudice.

## CONCLUSION

For reasons stated, the court will grant Defendants' motion to dismiss (ECF No. 18) as to BCDC and deny it as to the Warden, and grant Murrill's motion to appoint counsel (ECF No. 25) by separate Order to follow.


January 14, 2019                                           _____/s/_____
                                                           DEBORAH K. CHASANOW
                                                           United States District Judge